633 S.E.2d 898

**The STATE, Petitioner/Respondent,**

v.

**Willie Earle REESE, Jr., Respondent/Petitioner.**

**No. 26195.**

Supreme Court of South Carolina.

Heard June 8, 2006.

Decided Aug. 7, 2006.

Rehearing Denied Sept. 7, 2006.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, Senior Assistant Attorney General William Edgar Salter, III; and Solicitor W. Barney Giese, all of Columbia, for Petitioner–Respondent.

Jack B. Swerling, of Columbia, for Respondent–Petitioner.

Justice MOORE:

Willie Earl Reese, Jr. was convicted of murder and sentenced to imprisonment for thirty-five years. The Court of Appeals reversed Reese's conviction, holding that the trial judge erred in: (1) failing to charge the jury on involuntary manslaughter; and (2) denying Reese's motion for a mistrial based on the solicitor's closing argument. *State v. Reese*, 359 S.C. 260, 597 S.E.2d 169 (Ct.App.2004). Chief Judge Hearn filed a dissenting opinion. We granted petitions for writs of certiorari filed by the State and Willie Earl Reese to review the decision of the Court of Appeals reversing Reese's conviction for murder. We affirm in part and reverse in part.

## FACTS

Willie Earl Reese and Teresa Reese were married in 1999. In April 2001, Teresa left the marital home and moved in with her parents, Cora and Donald Joyner. On April 28, 2001, Teresa and her cousin Edith played in a softball game and, afterwards, went to a bar with other team members. While Teresa was away, Reese called her parents' house three or four times looking for Teresa. Reese also drove around the neighborhood for several hours while Teresa was out and finally parked at the end of the street where Teresa's parents lived. Phone records indicated that, between 9:45 p.m. and 2 a.m., Reese called Teresa's cell phone fifty-one times.

Teresa and Edith left the bar at approximately 1:30 a.m., with Edith following Teresa home. When they arrived at the neighborhood where Teresa was living with her parents, Edith noticed Reese stopped at a stop sign in front of the street where Teresa's parents lived, sitting in his car. Teresa stopped and spoke briefly to Reese, then drove to her parents' home. Edith and Reese followed Teresa home. When Edith got out of her car to determine whether Teresa was all right, she noticed Reese exiting his car and walking calmly towards Teresa. Edith saw Teresa and Reese standing on the sidewalk talking as she drove to her home, two houses away. When Edith entered her house, she called Teresa. While dialing the number, she heard Reese's car drive away. Edith spoke to Cora, who went to check on Teresa. When Cora saw Teresa lying on the sidewalk, she began to scream. Edith returned to Cora's house and saw Teresa lying on the sidewalk with her eyes wide open and blood running down the side of her ear.

Later on the morning of April 29, 2001, Reese turned himself in to police. He took police to his parents' home, where he had hidden the gun with which he shot Teresa, and to his aunt's home, where he left his car. In his statement to police, Reese admitted shooting Teresa. However, he stated that he did not go to her house to kill her. According to Reese, he was upset and crying while talking to Teresa. He pulled the gun out and told Teresa he was going to kill himself. When Teresa tried to talk him out of killing himself, Reese was "moving the gun back and forth as a reaction." Reese stated he did not know why the gun went off because he thought both of the gun's safeties were on. The evidence showed the gunshot wound which killed Teresa was from the gun being either very close to, or in contact with, Teresa's head.

The trial judge charged the jury on murder and denied Reese's requests for charges on involuntary manslaughter and accident. The jury found Reese guilty of murder.

## THE STATE'S ISSUES

I.  Did the Court of Appeals err in holding Reese was entitled to an involuntary manslaughter instruction?

36

II. Did the Court of Appeals err in holding a mistrial should have been granted based on the solicitor's closing argument?

## DISCUSSION

### Involuntary Manslaughter

The State argues the Court of Appeals erred in holding Reese was entitled to an involuntary manslaughter instruction. We agree.

If there is any evidence warranting a charge on involuntary manslaughter, then the charge must be given. *State v. Cabrera–Pena,* 361 S.C. 372, 605 S.E.2d 522 (2004); *State v. Burriss,* 334 S.C. 256, 513 S.E.2d 104 (1999). Involuntary manslaughter is the killing of another without malice and unintentionally while engaged in either: (1) an unlawful act not amounting to a felony and not naturally tending to cause death or great bodily harm; or (2) a lawful act with reckless disregard for the safety of others. *State v. Cabrera–Pena, supra; State v. Tucker,* 324 S.C. 155, 478 S.E.2d 260 (1996).

It is a felony for a person to present or point at another person a loaded or unloaded firearm. S.C.Code Ann. § 16–23–410 (2003). Suicide is an unlawful act. *State v. Levelle,* 34 S.C. 120, 13 S.E. 319 (1891), *overruled on other grounds, State v. Torrence,* 305 S.C. 45, 406 S.E.2d 315 (1991).

Reese argues that the jury could have found he was not pointing or presenting a firearm or in the process of committing suicide, but was merely *threatening* to commit suicide, which is not an unlawful act.

Although the jury could have found Reese's statement that he was moving the gun back and forth did not constitute *pointing* a firearm, and threatening suicide has not been classified as an unlawful act, there is no doubt that Reese was *presenting* a firearm when he took the gun out and began waiving it around. Therefore, Reese was pointing or presenting a firearm, a felony, which would preclude an involuntary manslaughter charge. Accordingly, the Court of Appeals erred in holding Reese was entitled to an involuntary manslaughter instruction.

*Closing Argument*

The State argues the Court of Appeals erred in holding Reese was entitled to a new trial based on the solicitor's closing argument. We disagree.

In his closing argument, the solicitor asked the jury,

Who speaks for Teresa Reese? In this system of justice that we have in this type of case, who speaks for Teresa Reese? That is the question that has been asked since April the 29th ... of this year, since the day she died. From the time that Willie Earl Reese was arrested, the time that he initially appeared in court, through the Grand Jury proceedings, when he was placed on the trial docket, when his case was called on Monday, when you jurors with your fellow jurors assembled downstairs before Judge Manning, during the process of you being selected for this case, from opening statements of Ms. Campbell and Mr. Swerling through the presentation of the testimony and the submission of evidence, through the closing remarks of Ms. Campbell and Mr. Swerling and as I stand before you, Madam Forelady and Ladies and Gentlemen, the question is: Who speaks for Teresa Reese? And I submit to you that that question can be answered and will be answered today.

After he argued the evidence showed Reese was guilty of murder, the solicitor again asked, "Who speaks for Teresa Reese?" Reese objected to the argument, and the trial judge overruled the objection, stating he would hear counsel on the motion later. The solicitor then continued, "So now I ask you, now that all the evidence is in upon my argument, who speaks for Teresa Reese? You do, Madam Forelady and Ladies and Gentlemen of the Jury.... You do. You speak for her ... You can speak for her with your verdict.... And so you, the State submits, will speak for her with your verdict, with your verdict." Again, Reese's objection to the argument was overruled.

Following the jury charge, Reese was allowed to place on the record his motion concerning the solicitor's argument. He contended the solicitor's argument asking the jury to speak for Teresa exceeded the bounds of permissible argument, personalized the issue to the jury, and injected inflammation and passion into the trial. Accordingly, Reese moved for a

38

mistrial. The motion was denied. When Reese later asked the trial judge for a curative instruction concerning the solicitor's argument, the judge denied the request.

A solicitor's closing argument must be carefully tailored not to appeal to the personal biases of the jury. *Von Dohlen v. State,* 360 S.C. 598, 602 S.E.2d 738 (2004), *cert. denied,* 544 U.S. 943, 125 S.Ct. 1645, 161 L.Ed.2d 511 (2005). The argument must not be calculated to arouse the jurors' passions or prejudices, and its content should stay within the record and reasonable inferences that may be drawn therefrom. *Id.*

Jurors are sworn to be governed by the evidence, and it is their duty to consider the facts of the case impartially. *Id.* A Golden Rule argument asking the jurors to place themselves in the victim's shoes tends to completely destroy all sense of impartiality of the jurors, and its effect is to arouse passion and prejudice. *Id.*

On appeal, the solicitor's argument will be reviewed in the context of the entire record. *State v. Copeland,* 278 S.C. 572, 300 S.E.2d 63 (1982). Once the trial judge has allowed the argument to stand, the accused has the burden of proving that the argument denied him a fair determination of guilt or innocence. *Id.* In order to constitute reversible error, it must be shown that the argument so infected the trial with unfairness as to make the resulting conviction a denial of due process. *Darden v. Wainwright,* 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986); *Donnelly v. DeChristoforo,* 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974); *Von Dohlen v. State, supra.*

The solicitor's argument indisputably asked jurors to abandon their impartiality and view the evidence from Teresa's viewpoint. Therefore, the Court of Appeals correctly held the argument was improper.

There is no doubt that, after repeatedly trying to get in touch with her, driving around her parents' neighborhood, and finally stopping at the entrance to the neighborhood to wait for her return, Reese shot Teresa in the head at very close range while presenting a firearm. However, because the

evidence of Reese's intent is disputed, the evidence of malice is not overwhelming.

Murder is the killing of any person with malice aforethought, either express or implied. S.C.Code Ann. § 16–3–10 (2003). Malice is the wrongful intent to injure another and indicates a wicked or depraved spirit intent on doing wrong. *State v. Kelsey*, 331 S.C. 50, 502 S.E.2d 63 (1998). It is the doing of a wrongful act intentionally and without just cause or excuse. *Tate v. State*, 351 S.C. 418, 570 S.E.2d 522 (2002).

According to Reese, he did not intend to kill Teresa, but the gun discharged by accident. The only evidence of malice was inferred. *Sellers v. State*, 362 S.C. 182, 607 S.E.2d 82 (2005) (malice may be inferred from the use of a deadly weapon); *State v. Watson*, 349 S.C. 372, 563 S.E.2d 336 (2002) (malice may be inferred from an act so reckless as to manifest depravity of mind and disregard of human life). Whether Reese had the required malice aforethought for murder was a question for the jury. Therefore, the evidence of Reese's guilt was not overwhelming, and the solicitor's improper Golden Rule argument deprived Reese of a fair trial.

## REESE'S ISSUES

Because we hold a new trial is warranted, it is unnecessary for us to address the issues raised by Reese.

## CONCLUSION

We reverse the decision of the Court of Appeals holding that Reese was entitled to an involuntary manslaughter instruction. However, we hold that Reese was prejudiced by the solicitor's improper Golden Rule argument since the question of malice was in contention. Accordingly, we affirm the Court of Appeals' decision reversing Reese's conviction and remanding the case for a new trial.

**AFFIRMED IN PART; REVERSED IN PART.**

TOAL, C.J., WALLER, J., and Acting Justice HOWARD P. KING, concur. BURNETT, J., dissenting in a separate opinion.

Justice BURNETT dissenting:

I respectfully dissent in part. I agree with the majority's conclusion the Court of Appeals erred in finding Reese was entitled to an involuntary manslaughter charge. I also agree the solicitor's closing argument was improper; however, in my opinion, this error was harmless because of the overwhelming evidence of Reese's guilt.

When guilt is conclusively proven by competent evidence, such that no other rational conclusion could be reached, this Court will not set aside a conviction for insubstantial errors not affecting the result. *State v. Livingston,* 282 S.C. 1, 6, 317 S.E.2d 129, 132 (1984).

In the testimony developed at trial, Reese admitted he possessed a gun, waved it back and forth, and shot Teresa, but he claimed the gun accidentally discharged. Several witnesses testified Teresa died from a single gunshot wound to the head which was either very close to or directly against her head. Regardless of Reese's allegation that he did not have an express intent to kill Teresa, his actions rise to the level of implied malice. *See* S.C.Code Ann. § 16–3–10 (rev. 2003) (Murder "is the killing of any person with malice aforethought, either express or implied."); *State v. Campbell,* 287 S.C. 377, 379, 339 S.E.2d 109, 109 (1985) ("The implication of malice may arise from the use of a deadly weapon. A deadly weapon is generally defined as 'any article, instrument or substance which is likely to produce death or great bodily harm.' ") (internal citations omitted).

The undisputed evidence in this case unequivocally demonstrates Reese killed Teresa while feloniously presenting a firearm. Based on this overwhelming evidence of Reese's guilt, I conclude the solicitor's improper comments during closing argument were harmless beyond any reasonable doubt.