680 S.E.2d 909

**Brandon Leandre BROWN, Respondent,**

v.

**STATE of South Carolina, Petitioner.**

**No. 26691.**

Supreme Court of South Carolina.

Submitted June 24, 2009.

Decided July 27, 2009.

508

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Assistant Attorney General Julie M. Thames, all of Columbia, for Petitioner.

Deputy Chief Appellate Defender Wanda H. Carter, of South Carolina Commission on Indigent Defense, of Columbia, for Respondent.

Justice BEATTY.

In this post-conviction relief (PCR) case, this Court granted the State's petition for a writ of certiorari to review the PCR judge's order granting Brandon Leandre Brown a new trial for his convictions of first-degree, criminal sexual conduct with a minor (CSC) and transmitting a sexual disease. The State contends the PCR judge erred in finding Brown's trial counsel was ineffective for failing to object to certain comments made by the solicitor during his closing argument. We reverse.

## FACTUAL/PROCEDURAL HISTORY

At trial, four witnesses, all of whom either lived across the street or were visiting across the street from Brown's residence on August 4, 2001, testified they observed Brown in his three-year-old stepdaughter's bedroom on top of the child moving his body in a manner that indicated sexual activity. One of the witnesses testified that "[Brown was] humping up and down on her." The witnesses testified they were able to see the incident through the child's bedroom window because the blinds were wide open, the light was on in the bedroom, and it was dark outside at 11:30 p.m. One witness, upon his initial observation, retrieved a pair of binoculars to confirm what he thought he had seen. Based on their observations, the witnesses became upset, called the police, and then went to Brown's residence to assist the child and to confront Brown. All four witnesses testified that when Brown answered the door, he had an erection.

Shortly after the incident, officers with the Timmonsville Police Department responded to Brown's residence. After interviewing the witnesses for approximately two hours, the officers took Brown to the police station where he gave two audio-taped statements. These statements were admitted at trial. In these statements, Brown denied that he intended to sexually assault his stepdaughter; however, he admitted that he became aroused while wrestling with her and that he may have accidentally penetrated her. In his first statement, Brown explained that he just got too close to the child and that his penis "might have hit her a couple of times." In his second statement, Brown stated that it was possible that penetration occurred but that he did not intend to penetrate

her. Toward the end of the interview, Brown stated "I came ... into her a couple of times but not intentionally." When questioned at trial about the incident, Brown testified that he was tickling and wrestling with the child but denied that he penetrated her.

Rhonda Turner, Brown's ex-wife and the mother of the child, testified that during the time leading up to the incident and the day of the incident, Brown was unemployed and had access to her daughter during the daytime. In describing her relationship with Brown, she stated that they were married for approximately a year and had a son, who was born on July 4, 2001. Rhonda admitted that she contracted gonorrhea from Brown. She testified that she learned of the STD when her physician's office called her and instructed her to report to the office on the Monday following the August 4, 2001 incident between Brown and her daughter. During that phone call, Rhonda was informed that she had tested positive for gonorrhea and needed to be seen by her doctor. Rhonda delayed this visit for one day because she took her daughter to be medically evaluated on the Monday following the incident. As a result of this evaluation, the child was given a shot for gonorrhea.

When questioned about the incident between Brown and her daughter, Rhonda testified that she spoke with Brown about it at the Timmonsville Police Department. During this conversation, Brown said, "Well, I mean, I may have, you know, been playing with her; and my penis may have fallen out of my boxers; and I may have gotten erected; and her panties may have gone to the side." Rhonda, however, testified that when she spoke with Brown again during a telephone conversation he said "he didn't do it."

As part of its case, the State presented Kathy Saunders as an expert witness in "child sexual assault" and "child sexual abuse." Saunders testified that she examined the child two days after the incident because she was out-of-town and unable to evaluate the child when she was taken to the emergency room immediately after the incident with Brown. As a result of her examination, Saunders discovered "copious" amounts of green discharge coming from the child's vaginal opening. Saunders characterized this finding as a "classic"

symptom of gonorrhea. Although there was no evidence of an acute injury causing vaginal tearing or bleeding, Saunders noted in her examination that there was redness around the child's labia and surrounding tissue. Specifically, Saunders testified "[t]here was some mild redness, with what appeared to be resolution of labial lesions or just some type of contact dermatitis." She further stated the tissue in the surrounding area "appeared kind of red, very thickened or swollen." Saunders indicated that these physical findings could be consistent with "someone penetrating the [child's] labia." In addition to her physical examination, Saunders testified the child's mother told her that the child had recently been wetting the bed, complained of stomach aches and nightmares, and had vaginal discharge. Saunders believed these symptoms could be indicative of sexual abuse.

In addition to Brown's testimony and the testimony of several character witnesses, the defense presented evidence attempting to refute that Brown could have transmitted gonorrhea to the child during the August 4, 2001 incident. Specifically, the defense presented medical records which indicated that Brown had been treated for gonorrhea on May 23, 2001, and July 26, 2001.

In support of its theory, the defense also offered the testimony of Dr. Elizabeth Lynn Harvey Baker–Gibbs, an expert witness on the "diagnosis and treatment of sexual abuse." Dr. Baker–Gibbs testified regarding the type and effectiveness of the medication prescribed for the treatment of gonorrhea. When presented with the facts of the instant case, she opined that if Brown had properly taken his prescribed medication on July 26, 2001, he would not have been contagious after July 29, 2001. Based on these facts, she ultimately concluded that Brown would not have been contagious on August 4, 2001, the date of the incident.

Following motions from counsel, the trial concluded with closing arguments. At end of his closing argument, the solicitor stated:

> I embrace my burden because I represent the State of South Carolina. And I think someone said at the beginning of this trial this is trying to protect the rights of people. Well, I tell you what. I'm here to protect the innocent. I'm

here to protect [child victim] a four-year-old child now. Three-year-old little child at that time. And I am the last person that you're going to hear speak up for her.

So, I ask you, when you go back in that jury room, you speak up for [child victim]. We can never put her back to where she was before this abuse occurred. But we can make sure that the perpetrator is punished. So when you go back in that jury room to deliberate, ladies and gentlemen, speak up for [child victim].

Brown's trial counsel did not object to these remarks. The jury convicted Brown of first-degree criminal sexual conduct with a minor and transmitting a sexual disease. Subsequently, the trial judge sentenced Brown to twenty-five years imprisonment for the CSC charge and a concurrent term of thirty days imprisonment for the transmission of a sexual disease charge.

Brown appealed his convictions and sentences to the Court of Appeals. In an unpublished opinion, the Court of Appeals affirmed Brown's convictions and sentences. *State v. Brown*, Op. No.2004–UP358 (S.C. Ct.App. filed June 4, 2004).

Following the decision of the Court of Appeals, Brown filed a timely PCR application. Once represented by counsel, Brown filed an amended PCR application. In these applications, Brown alleged his trial counsel was ineffective in several respects, including counsel's failure to object to the remarks made by the solicitor in his closing argument.

At the PCR hearing, Brown's counsel asserted the solicitor's comments "to speak up for the victim" amounted to a "Golden Rule" type argument that has been deemed improper by our state appellate courts. Additionally, PCR counsel contended the improper argument was prejudicial because it appealed to the passion and prejudice of the jury by asking the jury to be an advocate for the child victim.

Brown's trial counsel, the only witness called to testify, admitted that an objection should have been made to the solicitor's comments. However, he stated the reason "those statements were not objected to was because I didn't want to exacerbate a bad set of facts to point out to the jury something that would already aggravate what appeared to be a pretty bad case." Trial counsel also pointed out the "gravity

of the evidence" the State presented against Brown. He further noted he did not want to give the jury a reason to dislike or hate his client.

In an oral ruling, the PCR judge informed counsel that he was granting Brown relief in the form of a new trial solely on the ground that trial counsel was ineffective in failing to object to the remarks made by the solicitor during closing argument.

In a detailed written order, the PCR judge explained that trial counsel's failure to object to the solicitor's closing argument was "clearly error." The judge further found that "[t]here is a reasonable probability, based upon the evidence before this Court, that failure to object to this inappropriate argument undermined the confidence in the outcome in this trial."

In terms of the evidence, the judge concluded that there was not overwhelming evidence of guilt given it "consisted of very questionable eyewitness testimony, [Brown's] two statements, and the fact that at some point, although not at the time of the incident, [Brown] had gonorrhea." The judge characterized the eyewitness testimony as "questionable" in light of defense counsel's contention at trial that due to the position of the child's bedroom window "there was no possible way the witnesses could have seen what they claimed to have seen." Additionally, the judge referenced the State's expert witness testimony that the child could not have tested positive for gonorrhea the day after the incident and the testimony that Brown could not have been contagious on the date of the incident. The judge further noted that Brown denied sexually assaulting the child and that there was no evidence of "tearing or obvious injury to the child's vagina."

The judge also rejected the State's contention that the solicitor's comments were so limited that they could not have affected the trial. Specifically, the judge stated that "[g]iven the seriousness of the offense and the emotions involved, these comments were more than enough to place the jury in a position of being asked to stand up for, help, protect, and advocate for a very small child." The judge believed that "[i]t is clear that the Solicitor's statements encouraged the jury to depart from neutrality and decide the case based on passion and bias rather than the evidence, which led to the jury's

verdict being undermined." Ultimately, the PCR judge found trial counsel was ineffective and, as a result, granted Brown a new trial as to both of his convictions.

The State petitioned for and was granted a writ of certiorari for this Court to review the PCR judge's order.

## STANDARD OF REVIEW

▮▮ A defendant has the right to the effective assistance of counsel under the Sixth Amendment to the United States Constitution. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "There is a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment in making all significant decisions in the case." *Tate v. State*, 351 S.C. 418, 425, 570 S.E.2d 522, 526 (2002).

▮ In a PCR proceeding, the applicant bears the burden of establishing that he is entitled to relief. *Butler v. State*, 286 S.C. 441, 334 S.E.2d 813 (1985). In order to prove that counsel was ineffective, the PCR applicant must show that: (1) counsel's performance was deficient; and (2) there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different. *Caprood v. State*, 338 S.C. 103, 109, 525 S.E.2d 514, 517 (2000) (citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). "A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial." *Ard v. Catoe*, 372 S.C. 318, 331, 642 S.E.2d 590, 596 (2007). "Furthermore, when a defendant's conviction is challenged, 'the question is whether there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt.'" *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 695, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

▮ This Court will uphold the findings of the PCR court if there is any evidence of probative value to support them. *Cherry v. State*, 300 S.C. 115, 119, 386 S.E.2d 624, 626 (1989). However, if no probative evidence supports these findings, the

Court will not uphold the findings of the PCR court. *Jackson v. State*, 355 S.C. 568, 570, 586 S.E.2d 562, 563 (2003). "The decision of the PCR judge may be reversed when it is controlled by an error of law." *Hiott v. State*, 381 S.C. 622, 625, 674 S.E.2d 491, 492 (2009).

## DISCUSSION

The State contends the PCR judge erred in granting Brown a new trial on the ground that his trial counsel was ineffective in failing to object to certain portions of the solicitor's closing argument. Initially, the State asserts that counsel was not ineffective given he "articulated a valid reason for not objecting when he stated he was worried about the jury hating his client." In support of this assertion, the State points to the testimony of trial counsel that "there was a lot of evidence against [Brown] and that he did not wish to aggravate an already bad situation." The State also references trial counsel's testimony that the solicitor's comments were limited in that they were made "quickly." Even if trial counsel's performance was deficient in that there was no objection to the solicitor's comments, the State claims that Brown was not prejudiced in view of the overwhelming evidence of guilt presented at trial.

"A solicitor's closing argument must be carefully tailored so as not to appeal to the personal biases of the jury." *Von Dohlen v. State*, 360 S.C. 598, 609, 602 S.E.2d 738, 744 (2004). "The argument must not be calculated to arouse the jurors' passions or prejudices, and its content should stay within the record and reasonable inferences that may be drawn therefrom." *Id.* at 609–10, 602 S.E.2d at 744.

" 'While the solicitor should prosecute vigorously, his duty is not to convict a defendant but to see justice done.' " *State v. Northcutt*, 372 S.C. 207, 222, 641 S.E.2d 873, 881 (2007) (quoting *State v. Linder*, 276 S.C. 304, 312, 278 S.E.2d 335, 339 (1981)). " 'The solicitor's closing argument must, of course, be based on this principle.' " *Id.* "A Golden Rule argument asking the jurors to place themselves in the victim's

shoes tends to completely destroy all sense of impartiality of the jurors, and its effect is to arouse passion and prejudice." *State v. Reese*, 370 S.C. 31, 38, 633 S.E.2d 898, 901 (2006).

"On appeal, the appellate court will view the alleged impropriety of the solicitor's argument in the context of the entire record, including whether the trial judge's instructions adequately cured the improper argument and whether there is overwhelming evidence of the defendant's guilt." *Simmons v. State*, 331 S.C. 333, 338, 503 S.E.2d 164, 166 (1998). "Improper comments do not automatically require reversal if they are not prejudicial to the defendant, and the appellant has the burden of proving he did not receive a fair trial because of the alleged improper argument." *Humphries v. State*, 351 S.C. 362, 373, 570 S.E.2d 160, 166 (2002). "The relevant question is whether the solicitor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.; see State v. Hornsby*, 326 S.C. 121, 129, 484 S.E.2d 869, 873 (1997) ("A denial of due process occurs when a defendant in a criminal trial is denied the fundamental fairness essential to the concept of justice.").

Turning to the facts of the instant case, we find the PCR judge correctly concluded the solicitor's remarks were improper in that they amounted to an impermissible "Golden Rule" type argument. *See State v. Reese*, 359 S.C. 260, 271, 597 S.E.2d 169, 175 (Ct.App.2004) (recognizing that a "Golden Rule" argument which suggests to jurors to put themselves in the shoes of one of the parties is generally impermissible because it encourages the jurors to depart from neutrality and to decide the case on the basis of personal interest and bias rather than evidence), *aff'd in part and rev'd in part*, 370 S.C. 31, 633 S.E.2d 898 (2006) (affirming the Court of Appeals' finding that the defendant was entitled to a new trial based on the solicitor's "Golden Rule" closing argument in which he repeatedly asked jurors to "speak" for the murdered victim).

Here, it is indisputable that the case was "emotionally charged" given it involved sexual misconduct with a three-year-old child. Thus, the solicitor's remarks imploring the

jurors to "speak for" the victim undeniably asked the jurors to set aside their impartiality and, instead, consider the evidence from the subjective position of the child victim.

In view of this improper argument, we agree with the PCR judge that it was incumbent upon Brown's trial counsel to object to the solicitor's closing remarks. Furthermore, although we do not believe trial counsel was disingenuous in articulating a trial strategy to explain his failure to object to these comments, we find this "strategy" cannot be construed as a valid one given the evident impropriety of the solicitor's remarks. *Cf. Stokes v. State,* 308 S.C. 546, 548, 419 S.E.2d 778, 779 (1992) ("Where ... counsel articulates a valid reason for employing certain strategy, such conduct will not be deemed ineffective assistance of counsel."); *Whitehead v. State,* 308 S.C. 119, 122, 417 S.E.2d 529, 531 (1992) (recognizing that "[c]ourts must be wary of second-guessing counsel's trial tactics; and where counsel articulates a valid reason for employing certain strategy, such conduct will not be deemed ineffective assistance of counsel").

Based on the foregoing, we hold trial counsel was deficient in failing to object to the challenged portion of the solicitor's closing argument because it constituted a "Golden Rule" argument which impermissibly appealed to the passion of the jurors by asking them to "speak up" for the child victim. However, we find Brown did not satisfy his requisite burden of proving that there was a reasonable probability that but for counsel's deficient performance the result of his trial would have been different.

First, the solicitor's comments came at the very end of his closing argument and were limited in duration. Thus, we find the solicitor's comments did not so infect the trial with unfairness as to make the resulting conviction a denial of due process. *See Smith v. State,* 375 S.C. 507, 654 S.E.2d 523 (2007) (concluding any impropriety in the solicitor's closing argument was not sufficient to grant defendant post-conviction relief where solicitor's improper use of the pronoun "I" was limited, did not recur throughout his argument, there was overwhelming evidence of the defendant's guilt, and the trial

judge instructed the jury not to consider counsel's statements as evidence); *see also Von Dohlen,* 360 S.C. at 613–14, 602 S.E.2d at 746 (holding trial counsel, during the penalty phase of a capital case, was deficient in failing to object to solicitor's comment for the jurors to put themselves in the victim's shoes, but finding such deficient performance was not prejudicial); *cf. State v. McDaniel,* 320 S.C. 33, 462 S.E.2d 882 (Ct.App.1995) (finding solicitor's use of "you" forty-five times during closing argument asking the jurors to put themselves in the place of the victim constituted reversible error and warranted a new trial).

Secondly, there was overwhelming evidence of Brown's guilt. The State presented four eyewitnesses who testified to seeing Brown commit the sexual misconduct against the child. Each of the witnesses testified they could see into the child's bedroom window because the blinds were wide open, it was dark outside, and there was a light on in the bedroom. They further explained that they were able to see more clearly when they approached the window to confront Brown by banging on the bedroom window. Additionally, each witness testified that when Brown opened the door, he had an erection.

Although Brown's defense counsel attempted to establish that the witnesses' testimony differed from their written statements regarding certain details, the witnesses were adamant that they could clearly see through the child's bedroom window. They also explained that they wrote their statements for the police immediately after witnessing the incident while sitting in the dark on top of the police cars.

The State also presented the two audio-taped statements given by Brown in which he admitted to "accidental" or "possible" penetration of the child. Brown's ex-wife also testified that when she spoke with Brown at the police station he admitted that he had been playing with the child and said, "my penis may have fallen out of my boxers; and I may have gotten erected; and her panties may have gone to the side."

Additionally, the State's expert witness testified that the child exhibited physical and psychological symptoms which

were indicative of sexual abuse. This expert witness also confirmed that the child had been diagnosed with gonorrhea. Although the defense presented evidence that Brown may not have been contagious on the day of the incident, there was testimony that prior to the incident he was diagnosed with gonorrhea and had access to the child alone during the day.

Finally, the jury only deliberated for thirty-eight minutes before finding Brown guilty of both charges. Notably, the trial judge also recognized that the evidence of guilt was overwhelming when he stated during sentencing:

> I want to say to you also that the evidence in this case, sir, was overwhelming, including four eyewitnesses, which is very unusual for a crime which generally occurs in secret; your obvious and your unnatural state of arousal when you went to the door or when you were confronted about this; the transmission of gonorrhea to a child victim; and your own admissions that are contained in your own statements, sir. All of these are overwhelming evidence in the view of this court.

Based on the foregoing, we hold that any impropriety in the solicitor's closing argument was not sufficient to warrant the PCR judge's decision to grant a new trial.

## CONCLUSION

Although we find the PCR judge correctly determined that trial counsel was deficient in failing to object to the solicitor's "Golden Rule" closing argument, we hold Brown failed to prove that there was a reasonable probability that but for this error the result of his trial would have been different. Accordingly, the decision of the PCR judge is

**REVERSED.**

TOAL, C.J., WALLER, PLEICONES and KITTREDGE, JJ., concur.