# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Carrol Tremayne Washington, Petitioner,

v.

State of South Carolina, Respondent.

Appellate Case No. 2021-000754

---

## ON WRIT OF CERTIORARI

---

Appeal from Newberry County
J. Mark Hayes, II, Post-Conviction Relief Judge

---

Opinion No. 6095
Heard November 12, 2024 – Filed January 15, 2025

---

## REVERSED

---

Appellate Defender Lara Mary Caudy, of Columbia, for Petitioner.

Assistant Attorney General Zachary William Jones, of Columbia, for Respondent.

---

**GEATHERS, J.:** In this post-conviction relief (PCR) action, Petitioner Carrol Tremayne Washington assigns error to the PCR court's dismissal of his PCR application, wherein he alleged ineffective assistance of counsel because trial counsel failed to object to the State's closing argument that improperly vouched for the complaining witness. We reverse.

# FACTS/PROCEDURAL HISTORY

In March 2016, a jury found Washington guilty of one count of first-degree criminal sexual conduct (CSC) with a minor,[1] and he was sentenced to twenty-five years' imprisonment.

A year earlier, in March 2015, the minor victim (Victim) disclosed to her mother (Mother), Nicole Simms, that "Man" took her into a bathroom during a game of hide and seek and digitally penetrated her anus. Washington's nickname is "Man." Victim was eight-years-old at the time of the alleged abuse.[2] Shortly after Victim's disclosure, Mother contacted law enforcement to alert them of the allegations. Investigator Brad Epps of the Newberry Sheriff's Office presented Victim with a photo lineup, and she identified Washington as the person who molested her.

Victim alleged the abuse occurred when she was visiting her grandmother (Grandmother), Ethyl Simms, at her apartment in the Whitmore Apartments complex. While visiting Grandmother, Victim, along with many other children in the area, would often play in Tonya Dawkins's apartment in the same complex. Dawkins, Mother's second cousin, lived with her son and her boyfriend, Washington. The alleged abuse occurred in Dawkins's and Washington's apartment.

At trial, Mother testified about Victim and her disclosure, and Grandmother testified about Victim's visits to her home. Mother testified that in spring 2014, Victim began to refuse to go to Grandmother's home and to have behavioral problems like crying and acting up in school. Investigator Epps testified about Mother's report of abuse and Victim's selection of Washington's photo in the lineup. S.B., a minor who also played in Dawkins's apartment, testified that she saw Victim and Washington in the bathroom together during a game of hide and seek.[3] Trina

---

[1] "A person is guilty of [CSC] with a minor in the first degree if . . . the actor engages in sexual battery with a victim who is less than eleven years of age . . . ." S.C. Code Ann. § 16-3-655(A)(1) (2015). "'Sexual battery' means . . . any intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, except when such intrusion is accomplished for medically recognized treatment or diagnostic purposes." S.C. Code Ann. § 16-3-651(h) (2015).

[2] Victim also alleged two other occasions in which Washington acted in an inappropriate manner but did not touch her. Washington was not indicted for anything related to these two occasions.

[3] S.B. did not specify when she witnessed this interaction.

Elfering, who conducted Victim's forensic interview, testified Victim identified her buttocks as the area where Washington touched her.

Candice Hopkins, who knew Washington and Victim, testified her children would often go to Dawkins's apartment. Hopkins stated that after she questioned her children, none made any allegations against Washington and that Washington had a positive reputation. Hopkins also testified that she had known Mother for many years and that Mother had a reputation for being a "fabricator."[4] On cross-examination, Hopkins admitted she had a prior conviction for giving false information. Dawkins testified that she had never heard about or seen Washington acting inappropriately with any child and that neighborhood children still often came over to her apartment, even after neighbors became aware of Victim's allegations. Finally, Washington testified he never inappropriately touched Victim and had never been alone with Victim.

During closing arguments, the State argued,

> *I submit to you [Victim] was wholly credible.* That she's only capable of telling the truth. *She's not capable of carrying on a lie to that degree for that long.* A child just isn't capable of doing that. And they tried to crack her under the pressure. They have cross-examination . . . they question her and question her until she cracks and they catch her in a lie. They couldn't do it. *And a child will fold under a cross-examination because they're not capable of lying to that degree and to that extent* and her story was consistent.

(emphases added).

In giving the jury instructions, the trial court provided,

> You are to consider only the testimony which has been presented from this witness stand, any exhibits which have been made a part of the record in this case and any stipulations of counsel. . . . As I also told you, in every . . . case tried in this [c]ourt before a jury, the jury becomes the sole and exclusive judge of the facts in this

---

[4] This testimony was not corroborated.

case. . . . As jurors it is your duty to determine the [e]ffect, value, weight and truth of the evidence presented during this trial. . . . Necessarily, you must determine the credibility of witnesses who have testified in this case. Credibility simply means believability. It becomes your duty as jurors to analyze and to evaluate the evidence and determine which evidence convinces you of its truth.

The trial court also informed the jury of the special considerations when reviewing the credibility of a child witness (e.g., age of child, ability of child to observe and remember facts, child's ability to understand and answer questions, whether child can understand the difference between lying and telling the truth).[5] The jury deliberated for an hour and twenty minutes, returning a verdict of guilty. Washington appealed his conviction, and this court dismissed the appeal pursuant to *Anders v. California*, 386 U.S. 738 (1967).

Washington timely filed a PCR application alleging, among other things, that trial counsel provided ineffective assistance by failing to object to the State's improper vouching when addressing Victim's credibility during its closing arguments. During the PCR hearing, trial counsel testified that he did not object to the solicitor's statements because "I did not see . . . where any of the statements individually are clearly improper[,] and I did not see collectively where they crossed the line either." Trial counsel further stated, "[I]t is my opinion that the [State] [was] not vouching for the credibility of the witness."

The PCR court dismissed Washington's PCR application. The court first found the statements did not amount to improper vouching and thus trial counsel's performance was not deficient, reasoning "the solicitor used the evidence and record to attempt to counter the defense's theory that the [V]ictim either misremembered the incident or was coached into making the allegation." The PCR court further reasoned, "Although the solicitor state[d] at one point, 'I submit to you [Victim] was

---

[5] The trial court also charged the jury with language from section 16-3-657 of the South Carolina Code (2015)—"The testimony of the victim need not be corroborated in [CSC] prosecutions." Two months after this trial concluded, our supreme court overruled its precedent and held that it is impermissible to use section 16-3-657 as a jury charge. *State v. Stukes*, 416 S.C. 493, 500, 787 S.E.2d 480, 483 (2016) ("Based on the foregoing, we overrule our precedent to the extent it condones the use of section 16-3-657 as a jury charge."). However, this instruction complied with the law at the time.

wholly credible,' the solicitor made no personal assurances as to the witness's credibility, nor did he directly or indirectly refer to any information outside of the record." The PCR court additionally found Washington failed to prove the comments prejudiced him because he did not show "the comment infected the trial with unfairness as to make his conviction a denial of due process." This appeal followed.

## ISSUE ON APPEAL

Did the PCR court err in finding trial counsel provided effective assistance despite failing to object to the solicitor's improper vouching of the minor witness during the State's closing argument?

## STANDARD OF REVIEW

"Our standard of review in PCR cases depends on the specific issue before us. We defer to a PCR court's findings of fact and will uphold them if there is evidence in the record to support them." *Smalls v. State*, 422 S.C. 174, 180, 810 S.E.2d 836, 839 (2018). "However, [we] will reverse the [PCR] court's decision if it is controlled by an error of law." *Milledge v. State*, 422 S.C. 366, 374, 811 S.E.2d 796, 800 (2018). "We review questions of law de novo, with no deference to trial courts." *Smalls*, 422 S.C. at 180–81, 810 S.E.2d at 839.

## LAW/ANALYSIS

To prevail in an ineffective assistance of counsel claim, PCR applicants must show "(1) counsel failed to render reasonably effective assistance under prevailing professional norms, and (2) counsel's deficient performance prejudiced the applicant's case." *Speaks v. State*, 377 S.C. 396, 399, 660 S.E.2d 512, 514 (2008). Deficiency "is measured by an objective standard of reasonableness." *Taylor v. State*, 404 S.C. 350, 359, 745 S.E.2d 97, 102 (2013). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland v. Washington*, 466 U.S. 668, 690 (1984). A PCR applicant establishes prejudice by showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.* at 697. "In determining whether [a PCR] applicant has proven prejudice, the PCR court should consider

the specific impact counsel's error had on the outcome of the trial." *Smalls*, 422 S.C. at 188, 810 S.E.2d at 843.

During closing argument, "[a] solicitor has a right to state his version of the testimony and to comment on the weight to be given such testimony." *Smith v. State*, 375 S.C. 507, 523, 654 S.E.2d 523, 531–32 (2007) (citation omitted) (quoting *Randall v. State*, 356 S.C. 639, 642, 591 S.E.2d 608, 610 (2004)), *abrogated on other grounds by Smalls v. State*, 422 S.C. 174, 181 n.2, 810 S.E.2d 836, 839 n.2 (2018). However, "[a] solicitor's closing argument must be carefully tailored so as not to appeal to the personal biases of the jury. The State's closing arguments must be confined to evidence in the record and the reasonable inferences that may be drawn from the evidence." *Smith v. State*, 375 S.C. at 522–23, 654 S.E.2d at 531.

Additionally, "[i]t is improper for a judge or a prosecutor to bolster a witness's credibility by stating to the jury his or her view that the witness is likely being truthful." *State v. Reyes*, 432 S.C. 394, 401, 853 S.E.2d 334, 338 (2020). "Credibility is a determination for the jury." *Id.* at 404, 853 S.E.2d at 339. Moreover, "[a] solicitor may not vouch for the credibility of a State's witness based on personal knowledge or other information outside the record." *Matthews v. State*, 350 S.C. 272, 276, 565 S.E.2d 766, 768 (2002). "A prosecutor improperly vouches for a witness'[s] credibility and places the government's prestige behind a witness by making explicit personal assurances[] or indicating that information not presented to the jury supports the testimony." *Vaughn v. State*, 362 S.C. 163, 169, 607 S.E.2d 72, 75 (2004). "In assessing the propriety of remarks made during the State's closing argument, appellate courts must determine 'whether the solicitor's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process."'" *Tappeiner v. State*, 416 S.C. 239, 251, 785 S.E.2d 471, 477 (2016) (quoting *Vaughn*, 362 S.C. at 169–70, 607 S.E.2d at 75)).

We hold the PCR court erred in finding trial counsel was not deficient by failing to object to the State's closing argument because the State improperly vouched for Victim's credibility. Trial counsel testified at the PCR hearing that he did not object to the comments because he did not believe the comments amounted to vouching for Victim. Though this court does not seek to second-guess the reasonable decisions of trial counsel, trial counsel still must articulate a *valid* strategy for his decisions. *See Lounds v. State*, 380 S.C. 454, 462, 670 S.E.2d 646, 650 (2008) ("[W]hen counsel articulates a *valid* reason for employing a certain strategy, such conduct generally will not be deemed ineffective assistance of counsel." (emphasis added)). "[C]ounsel cannot assert trial strategy as a defense for failure to object to comments which constitute an error of law and are inherently prejudicial." *Matthews*, 350 S.C. at 276, 565 S.E.2d at 768.

The State's comments were clearly improper vouching. The State stated, "I submit to you [Victim] was wholly credible" followed by assurances that all children of Victim's age are not capable of lying and that children would "fold" under cross-examination if they were lying. The State's assurances were broad, unsubstantiated claims unrelated to anything raised during the trial. *See Matthews*, 350 S.C. at 276, 565 S.E.2d at 768 ("A solicitor may not vouch for the credibility of a State's witness based on personal knowledge or other information outside the record."). Although Victim's credibility and the possibility that her allegation was false certainly were at issue, the State did not confine its statements to the consistency of Victim's testimony or a characterization of the evidence from trial.[6] *See Vasquez v. State*, 388 S.C. 447, 458, 698 S.E.2d 561, 566 (2010) ("The State's closing arguments must be confined to evidence in the record and the reasonable inferences that may be drawn from the evidence."); *State v. Busse*, 439 S.C. 104, 111, 886 S.E.2d 208, 212 (2023) ("[T]he State should not inject the personal views or opinions of its representative as to the credibility of a witness into the jury's thought process."); *see also Matthews*, 350 S.C. at 276–77, 565 S.E.2d at 768 ("The solicitor's summation led the jury to believe the government corroborated the witness'[s] testimony before trial and found it credible. The solicitor did not support this vouching with anything within the record, such as corroboration by other witnesses or physical evidence. The solicitor improperly vouched for the witness.").

Further, the State used first-person language at the start of the comments—"I submit"—that suggested to the jury that the State held the opinion that Victim was telling the truth. *See Busse*, 439 S.C. at 112, 886 S.E.2d at 212 (stressing that "prosecutors must be cautious *how* they use the first person"); *see also Reyes*, 432 S.C. at 405, 853 S.E.2d at 340 (holding questions in which the solicitor used the first-person pronoun "we" when questioning the minor witness about telling the truth

---

[6] We note the beginning of the State's statement—"I submit to you [Victim] was wholly credible."—was framed in the past tense. The verb "was" at the beginning of the comment could be read as a reference back to Victim's testimony during the trial. *See State v. Busse*, 439 S.C. 104, 114, 886 S.E.2d 208, 213 (2023) (discussing that when "[v]iewed in the proper context," the solicitor's use of the past tense during the closing arguments "was actually to lead the jury to focus on the evidence presented to them, not to improperly harken back to his unique knowledge of some event or proceeding outside their presence"). However, the context of the State's overall comments make clear the State was not referring only to Victim's testimony. The State followed its statement that Victim was wholly credible with assurances that Victim was not capable of lying at all because children are not capable of lying.

were improper); *State v. Kelly*, 343 S.C. 350, 369 n.12, 540 S.E.2d 851, 860–61 n.12 (2001) (finding a solicitor's questions were improper vouching when the solicitor phrased his questions to the witness in the first person—"'What did *I* tell you that *I absolutely required* regarding your testimony to this jury today?' and 'Did *I* tell you to tell the truth to this jury?'" (emphases added)), *rev'd and remanded on other grounds*, 534 U.S. 246 (2002). The solicitor's opinion of the witness's credibility "carries with it the imprimatur" of the State and "may induce the jury to trust the [State's] judgment rather than its own view of the evidence." *Busse*, 439 S.C. at 112, 886 S.E.2d at 212 (quoting *Kelly*, 343 S.C. at 369, 540 S.E.2d at 860).

Finally, trial counsel's failure to object was prejudicial because there was no physical evidence of the alleged CSC and the only other evidence in the case required an assessment of the relative credibility of the witnesses. *See Tappeiner*, 416 S.C. at 253, 785 S.E.2d at 478 (holding that because the case was "entirely dependent on a credibility determination" and "[g]iven the dearth of evidence" beyond the victim's allegations, the court could not "say evidence of [the defendant's] guilt was overwhelming"; therefore, "but-for the improper vouching for [the v]ictim's credibility, there is a reasonable likelihood the outcome of the trial would have been different, and [the defendant] was thus prejudiced by trial counsel's failure to object"). Evidence of Washington's guilt was not overwhelming. Other than Victim's and Washington's testimonies, the only evidence presented to the jury was Victim's refusal to go to Grandmother's home, her behavioral problems, and her report of sexual abuse that identified Washington as the perpetrator. There is no physical evidence or corroborating evidence. *Cf. Chappell v. State*, 429 S.C. 68, 78, 81, 837 S.E.2d 496, 501, 503 (Ct. App. 2019) (holding that a blind expert witness's testimony improperly bolstered the minor victim's credibility "when she testified, 'Children don't often lie about sexual abuse incidents,' because a comment on the credibility of a class of persons to which the victim belongs is a comment on the credibility of the victim" and that "our courts have found improper bolstering testimony was prejudicial in every South Carolina case in which the State presented no physical evidence of the defendant's guilt or relied solely on the victim's testimony to establish the details of the crime"). At most, S.B.'s testimony that she saw Washington and Victim in the bathroom together during a game of hide-and-seek undercut Washington's testimony that he was never alone with Victim. However, S.B. did not see touching of any kind. Thus, in a case that turned on a credibility determination with little circumstantial evidence and no physical evidence, the State's comments granted Victim's testimony the imprimatur of credibility from the State and infected the trial with unfairness such that there was a reasonable probability that the outcome would have been different had trial counsel properly objected to these comments.

We take a moment to address the potential curative effect of the trial court's instructions to the jury that it alone bore the burden of weighing witness credibility and that it must consider only the testimony presented from the witness stand. In *Reyes*, our supreme court held the State's improper bolstering of a minor witness's credibility was cured by the trial court's jury instructions that the jury was responsible for determining credibility and "[c]rucially" that the credibility of a minor witness should be assessed through a "more suspect lens, thus removing any improper influence that arose from the solicitor's questioning." 432 S.C. at 408, 853 S.E.2d at 342. The State's comments in *Reyes* were "fleeting"[7] and occurred at the

---

[7] The exchange in *Reyes* was as follows:

> **Solicitor:** Okay. Do you know that while you're here, *we* only talk about things that are the truth?
>
> **Minor:** Yeah.
>
> **Defense:** Your Honor, just for the record, I want to preserve my objection.
>
> **Trial Court:** All right. As to the bolstering. Yeah, I think that the person can testify on their own behalf, just not another party.
>
> **Solicitor:** Minor, do you know the difference between the truth and a lie?
>
> **Minor:** (Nods head.)
>
> . . .
>
> **Solicitor:** Okay. So you understand that when *we're* in here, *we're* going to talk about the truth. Do you understand that?
>
> . . .
>
> **Minor:** Yes.

start of the minor witness's testimony. *Id.* at 407, 853 S.E.2d at 341. Also, in *Reyes*, defense counsel contemporaneously objected to the questioning as bolstering. *Id.* at 400, 853 S.E.2d at 337.

Here, the jury instructions cannot cure the improper vouching by the State. First, the comments were extensive, and they posited not only that Victim was credible, but also that it was impossible for her to be untruthful. Unlike in *Reyes*, this vouching was not fleeting and it occurred during the summation of the case. Even though the crucial instruction in *Reyes*—to view Victim's testimony through a more suspect lens due to her minor status—was given here, it did little to cure the improper vouching because the vouching did not happen during Victim's testimony. Second, trial counsel did not object *at all*. We have difficulty imagining how jury instructions could be curative when the jury was never made aware of the improper vouching. *See Tappeiner*, 416 S.C. at 251, 785 S.E.2d at 477 ("In assessing the propriety of remarks made during the State's closing argument, appellate courts must determine 'whether the solicitor's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process."'" (quoting *Vaughn*, 362 S.C. at 169–70, 607 S.E.2d at 75)); *State v. White*, 371 S.C. 439, 445, 639 S.E.2d 160, 163 (Ct. App. 2006) ("If the trial judge sustains a *timely objection* to evidence and gives the jury a curative instruction that it be disregarded, the error is deemed to have been cured by the instruction." (emphasis added)).

## CONCLUSION

For the foregoing reasons, the PCR court's order dismissing Washington's PCR application is

**REVERSED.**

**KONDUROS and MCDONALD, JJ., concur.**

---

**Solicitor:** Okay. Judge, at this time, I would move her as qualified to testify.

*Reyes*, 432 S.C. at 400, 853 S.E.2d at 337 (omissions in original).