**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE
CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING
EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA
In The Court of Appeals**

Ronnie C. Swofford, Petitioner,

v.

State of South Carolina, Respondent.

Appellate Case No. 2021-001436

Appeal From Greenville County
G. D. Morgan, Jr., Circuit Court Judge
Perry H. Gravely, Post-Conviction Relief Judge

Unpublished Opinion No. 2025-UP-294
Heard June 4, 2025 – Filed August 13, 2025

**REVERSED AND REMANDED**

Appellate Defender Joanna Katherine Delany, of
Columbia, for Petitioner.

Attorney General Alan McCrory Wilson, Deputy
Attorney General Donald J. Zelenka, Senior Assistant
Deputy Attorney General Melody Jane Brown, Assistant
Attorney General Ryan Thomas Kowalski, and Assistant
Attorney General Kaylee Christene Kemp, all of
Columbia, for Respondent.

**PER CURIAM:** Ronnie C. Swofford (Petitioner) appeals the post-conviction relief (PCR) court's order denying relief, arguing counsel was deficient for failing to challenge the State's claim that his blood was spattered on a wall at the crime scene. The State argues trial counsel was not deficient, and, even if he was, Petitioner failed to prove that there was a reasonable likelihood that the outcome of his trial would have been different if trial counsel had "ensured it was clear" that there was no evidence of Petitioner's blood on the wall. We reverse and remand to the Court of General Sessions for a new trial.

In 2009, a Greenville County grand jury indicted Petitioner for first-degree burglary, assault and battery with intent to kill (ABWIK), possession of a weapon during a violent crime, and possession of a pistol by a person convicted of a violent crime. A second grand jury indicted him in 2011 for assault with intent to kill (AWIK) in relation to the same incident as the previous charges. In 2012, Petitioner proceeded to trial on all charges.

At trial, Curtis Wooten (Victim) testified he and Petitioner were friends and he had loaned Petitioner money. He recalled that on the night of the incident, he and Petitioner had planned to meet so that Petitioner could pay him back but Petitioner later told him he was unable to meet. Victim testified that that same night, he was standing in his kitchen when a masked gunman entered his house and called out his name. He immediately recognized Petitioner as the gunman because the mask did not cover his entire face, the gunman was using a gun Petitioner had shown Victim several days before, and he recognized Petitioner's voice. The intruder shot Victim and fired several shots at Victim's girlfriend before Victim returned fire, striking the intruder. Victim and his girlfriend called 911 and went to the hospital immediately following the incident.

Officer John Derby, of Greenville County Forensics, testified he collected evidence from the crime scene in Victim's home and located a projectile hole in the kitchen wall as well as a projectile jacket and three cartridge cases on the floor. He described how the projectile jacket had "blood and possible tissue" on it. Derby further recalled observing "stains" on the wall around the projectile hole and explained the section was cut away and collected as evidence. Verona Gibson, an evidence processing technician in the DNA Department of the South Carolina Law Enforcement Division (SLED), testified she received the section of wall removed from Victim's house. She stated the wall stains were negative for the presence of blood but she did recover a hair from the wall. Adrian Hefney, a SLED DNA analysist, testified the "suspected blood tissue" from the projectile jacket found on the floor and the hair removed from the wall matched Petitioner's DNA.

Investigator Christopher Miller, of the Greenville County Sheriff's Office, testified he responded to the scene of the shooting, and he recalled "blood spattered on the wall." The State asked Miller whether the "suspected or possible blood, tissue, [or] hair" on the wall appeared to be "fresh," and he responded that the "blood" on the wall was red, which indicated it was "fresh blood." Trial counsel did not contemporaneously object or challenge Miller's description of the stains on cross-examination but asked if Miller felt the "blood" was fresh because it was in a liquid state.

Sergeant David Hayes, of the Greenville County Sheriff's Office, testified that at the hospital, Victim stated that an unknown assailant came into his home and began shooting at him. He then asked Victim if he knew anyone who would have done this; Victim immediately gave Petitioner's name and explained Petitioner owed him money. However, Hayes stated Victim also told him he was not "totally certain" the attacker was Petitioner.

Petitioner testified that he stopped by Victim's home several days before the shooting and Victim accidentally shot him but he did not report the incident out of loyalty to Victim. Petitioner presented the testimony of eight witnesses who claimed to have seen the wound on his arm before the date of this incident; however, the witnesses offered differing testimony regarding how Petitioner received the wound and the type of bandage he used for the wound. Additionally, four of the witnesses provided testimony claiming to have either seen or heard from Petitioner at the time of the incident.[1]

Despite Gibson's testimony that the substance on the wall was not blood, at various points during the trial, the State and trial counsel referenced the presence of Petitioner's "blood" at the crime scene. In its opening statement, the State told the jury that the intruder left DNA at the crime scene, including "[a] splatter on the kitchen wall and body tissue and hair." In his opening statement, trial counsel conceded that "the blood and tissue" at the crime scene belonged to Petitioner, but he contended there was an "innocent explanation." During closing arguments, trial counsel stated the "genetic material" belonged to Petitioner but argued no evidence showed the "blood" on the wall was "fresh," asserting that if it had been fresh, it would have been "dripping" in the photograph. He also noted SLED did not

[1] The State impeached some of Petitioner's witnesses with prior convictions and others were unable to explain why they had not told police before trial that they had seen Petitioner's injury prior to the incident.

perform tests to determine how long the "blood" had been on the wall and disagreed with Miller's testimony that it was "fresh." The State told the jury in closing that there was "fresh body tissue and blood" on the wall and "tissue, hair, and blood DNA" linking Petitioner to the scene, arguing that the presence of fresh blood negated Petitioner's explanation that he had been shot a week prior.

The jury found Petitioner guilty as indicted. The trial court sentenced him to life imprisonment without the possibility of parole (LWOP) for first-degree burglary, LWOP for ABWIK, ten years' imprisonment for AWIK, and five years' imprisonment for possession of a pistol by a person convicted of a violent crime.

Petitioner filed his first application for PCR.[2] At the PCR hearing, Petitioner argued trial counsel should have objected to the State's characterization of the wall staining as blood. Petitioner initially stated his blood was not found in the home but acknowledged on cross-examination that his blood tissue was found on the projectile jacket in the home. Trial counsel recalled that at trial, the State had pointed to the freshness of the "blood" on the wall to illustrate that Petitioner had not been shot the week before, as he claimed. Counsel stated he offered the testimony of several witnesses indicating they had seen Petitioner's wound before the incident, but counsel was unable to "remember what all was involved" with whether the staining on the wall was confirmed to be blood. Counsel acknowledged it was possible the term "blood" may have become "intermingled" with the term "genetic material" or "blood[-]like tissue" and he wished he had "someone to advise [him] about all the meanings and things of this somewhat complicated scientific evidence." He explained his primary concern at trial was overcoming the eyewitness testimony identifying Petitioner as the intruder and the genetic material placing Petitioner at the scene.

The PCR court found trial counsel was not ineffective for failing to object to the blood evidence, stating it did not find Petitioner's argument that "the blood evidence was not actually blood" to be persuasive. It further found trial counsel was not deficient because he properly questioned the State's witnesses and argued the forensic evidence was not dispositive. The court also found Petitioner failed to prove prejudice. The PCR court therefore denied Petitioner's application. PCR

---

[2] Petitioner also filed a direct appeal, but this court dismissed the appeal at Petitioner's request. Petitioner then filed a pro se motion for a new trial based on after-discovered evidence, which the circuit court denied. It also denied his Rule 59(e), SCRCP, motion for reconsideration. Petitioner appealed the denial of his motion for a new trial, which this court dismissed at Petitioner's request.

counsel filed a Rule 59(e) motion for reconsideration, which the PCR court denied.

In 2016, PCR counsel filed an untimely notice of appeal, which this court dismissed. In 2018, Petitioner filed a second PCR application seeking belated appellate review of the denial of his first PCR action pursuant to *Austin v. State*.[3] After a hearing, the second PCR court granted Petitioner a belated review of his first PCR.[4] Counsel for Petitioner filed a petition for a writ of certiorari asserting the second PCR court properly granted Petitioner a belated appeal of his first PCR action. Counsel also filed a petition for a writ of certiorari, pursuant to *Austin*, from the denial of Petitioner's first PCR action. Our court granted certiorari, and both parties filed briefs.

"In [PCR] proceedings, the burden of proof is on the applicant to prove the allegations in his application." *Speaks v. State*, 377 S.C. 396, 399, 660 S.E.2d 512, 514 (2008). To establish a claim of ineffective assistance of counsel, a PCR applicant must show that counsel was deficient and that counsel's deficiency prejudiced the defendant's case. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To demonstrate deficiency, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. Additionally, an applicant "must prove that he or she was prejudiced by such deficiency to the extent of there being a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Southerland v. State*, 337 S.C. 610, 616, 524 S.E.2d 833, 836 (1999) (emphasis omitted). However, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697.

We find the evidence does not support the PCR court's finding that trial counsel was not ineffective for failing to object to the "blood" evidence. *See Smalls v. State*, 422 S.C. 174, 180, 810 S.E.2d 836, 839 (2018) (explaining a reviewing court "defer[s] to a PCR court's findings of fact and will uphold them if there is any evidence in the record to support them"). First, we find trial counsel was deficient by failing to object to misstatements of evidence that invalidated Petitioner's defense. *See Strickland*, 466 U.S. at 688 ("The proper measure of attorney performance [is] simply reasonableness under prevailing professional norms.").

---

[3] 305 S.C. 453, 454-55, 409 S.E.2d 395, 396 (1991) (providing for the belated appellate review of the denial of PCR when the applicant did not knowingly and intelligently waive his right to appeal the denial of PCR).

[4] The State conceded Petitioner was entitled to a belated appellate review.

The State incorrectly argued Petitioner's fresh blood was spattered on the wall, despite the testimony of its own witnesses that the stains on the wall were *not* blood. *See Tappeiner v. State*, 416 S.C. 239, 251-52, 785 S.E.2d 471, 477-78 (2016) (finding trial counsel was ineffective for failing to object to the solicitor's statements misrepresenting the evidence). Trial counsel also continued to reference the "blood" on the wall after Gibson's testimony. The PCR court stated it did not find Petitioner's argument about the lack of blood to be "persuasive," conflating Petitioner's baseless argument about the lack of blood on the projectile jacket with his correct statement that the stains on the wall were not blood. Although the PCR court found trial counsel was not deficient because he argued the DNA evidence was not "dispositive," we find counsel's statements during closing arguments did not remedy the error because the presence of "fresh blood" directly contradicted Petitioner's defense that he had been shot a few days prior to the incident. The State relied extensively on Miller's description of the "blood" as "fresh" to invalidate Petitioner's defense, and rather than challenge that assertion on cross-examination, trial counsel instead conceded the substance was blood. Trial counsel never corrected the State's mischaracterization and later compounded the error by contending in closing arguments that if the "blood" had been fresh, it would have been "dripping."

Moreover, we hold trial counsel did not articulate a reasonable trial strategy for his failure to object. *See Abney v. State*, 408 S.C. 41, 46, 757 S.E.2d 544, 546-47 (Ct. App. 2014) ("Counsel must articulate a valid reason for employing a certain strategy to avoid a finding of ineffectiveness."). Trial counsel testified at the PCR hearing that his defense was to argue that Petitioner received his injury during an accidental shooting at the house a few days prior—a defense that was negated by the repeated references to "fresh" blood. He was unable to recall "what all was involved with" the testimony regarding the wall stains. Further, counsel stated that during the trial, the technical terms were "intermingled" and admitted he found the science of the evidence to be "complicated." Trial counsel did not articulate any reason for allowing the State and its witnesses to incorrectly characterize the nature of the evidence. *See Strickland*, 466 U.S. at 688 (explaining "the defendant must show that counsel's representation fell below an objective standard of reasonableness"). Accordingly, we hold the PCR court erred in finding trial counsel was not deficient for failing to object to the characterization of the stains as "blood" and "fresh blood."

Petitioner was prejudiced by trial counsel's failure to object because the misstatement of fact directly undermined Petitioner's only defense. *See Strickland*, 466 U.S. at 694 (stating a petitioner "must show that there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"); *Smalls*, 422 S.C. at 188, 810 S.E.2d at 843 ("In determining whether the applicant has proven prejudice, the PCR court should consider the specific impact counsel's error had on the outcome of the trial . . . . In addition, the PCR court should consider the strength of the State's case in light of all the evidence presented to the jury."). We acknowledge the State presented DNA evidence other than the wall stains linking Petitioner to the scene of the shooting as well as Victim's in-court identification of Petitioner as the person who shot him. However, Victim initially told Hayes that he did not know who shot him, and even after identifying Petitioner, Victim told Hayes he was not totally certain it was Petitioner. Furthermore, in *Smalls*, our supreme court noted that "eyewitness identification evidence is not conclusive." 422 S.C. at 194 n.8, 810 S.E.2d at 847 n.8. In addition, Petitioner's defense that he was shot at Victim's house several days before the incident at issue offered an alternative explanation for the presence of his DNA at the scene of the crime. *See id.* at 191, 810 S.E.2d at 845 ("[F]or the evidence to be 'overwhelming' such that it categorically precludes a finding of prejudice . . . the evidence must include something conclusive, such as . . . DNA evidence *demonstrating guilt* . . . ." (emphasis added)). In support of his defense, Petitioner presented witnesses who testified that they observed his wound before the incident and others who testified they saw or heard from Petitioner at the time of the incident. We acknowledge the jury heard testimony that the wall stains were negative for the presence of blood. However, both the State and trial counsel subsequently and repeatedly referred to the substance as blood—most notably, in the State's closing argument, when it alleged "fresh body tissue and blood" was found on the wall and in Miller's rebuttal testimony that the blood was "fresh." We find the continuous, inaccurate references to "blood" on the wall and the arguments regarding the "fresh[ness]" of the "blood" significantly undermined Petitioner's defense. Finally, the impeachment of the defense witnesses may have weakened Petitioner's defense, thereby heightening the prejudicial effect of trial counsel's failure to object to the mischaracterization of the scientific evidence. *See id.* at 188, 810 S.E.2d at 843 ("[T]he court must analyze how individual errors of counsel affect the important factual findings in a particular case." (citing *Strickland*, 466 S.C. at 695-96)). Thus, we hold Petitioner was prejudiced by trial counsel's deficiency. Accordingly, we reverse the PCR court's order denying post-conviction relief and remand to the Court of General Sessions for a new trial.

**REVERSED AND REMANDED.**

**WILLIAMS, C.J., and GEATHERS and TURNER, JJ., concur.**